[No. 24221.   Department Two.   March 17, 1933.]

FRANK B. PEALE *et al., Appellants,* v. K. K. TVETE *et al., Respondents.*[1]

[1]Reported in 20 P. (2d) 12.

*Geo. H. Crandell,* for appellants.

*L. B. Schwellenbach* and *Fred H. Lysons,* for respondents.

MAIN, J.—This action was brought to recover damages claimed to be due by reason of the termination by the defendants of a lease of real estate. The cause was tried to the court, and resulted in findings of fact from which it was concluded that the plaintiffs were not entitled to recover. Judgment was entered dismissing the action, from which they appeal.

The. facts are these: September 4, 1925, the respondents, being then the owners of lot 2 in block 60 of D. T. Denny's Park Addition to North Seattle, upon which there was a small apartment house known as the Taylor Apartments, leased the same to James Hedberg and C. Elsie Hedberg, his wife, for the term of five years, which would end September 30, 1930. May 11, 1928, the respondents entered into an agreement with Mr. and Mrs. Hedberg, which, after making certain recitals, provided:

"(1) That from on and after the date hereof the rent payable by lessees under the terms of said lease shall be One Hundred Twenty-five ($125) Dollars per month instead of One Hundred Fifty ($150) Dollars per month as provided in said lease.

"(2) The rent shall be abated during the period of time covered by the contract work directly in front of this 60 foot lot and during the time of the regrading of the lot itself and the adjustment of the building to the regrade and the installation of sewer and water connections.

"(3) Appreciating the income loss to the parties of the second part for the period of time they are deprived of the use of said premises in the period covered by the foregoing agreement numbered paragraph 2, the first parties further agree that said lease may be and the same is hereby extended for a

period of time equal to said period of loss of use and occupancy by the second parties, as contemplated in paragraph 2 above.

"(4) It is hereby stipulated and agreed between the parties that if at any time during the continuance of said lease, including the extension herein provided, the parties of the first part shall desire to repossess said premises and terminate said lease, the value of said lease and the amount which the first parties shall pay to the second parties for the termination and cancellation of said lease is hereby fixed in the sum of Three Thousand and no/100 Dollars ($3,000) and the second parties agree to such cancellation and termination at the expiration of 30 days written notice and payment to them of said sum of Three Thousand Dollars."

This agreement was prompted by reason of the fact that what is known as the Denny Hill regrade project was then in contemplation, and the condemnation proceedings had been concluded. In the agreement, it was recognized that the grading of the street in front of the property and the bringing of the lot down to the street grade would interfere with the occupancy of the building. July 3, Mr. and Mrs. Hedberg, with the consent of the agent for the respondents, assigned the lease to Frank B. Peale and Lillian Peale, his wife, the appellants.

In August, 1930, the regrade operations were approaching the property covered by the lease, and on the twentieth of that month, the agent of the respondents wrote the appellants a letter, the first paragraph of which is as follows:

"According to information received from George L. Nelson & Co., regrade contractors, the sewer and water serving property on Taylor Avenue in the vicinity of the Taylor Apts. will be cut off about September 15th. It will therefore be impossible for your tenants to occupy the building after the day that these facilities are cut off."

After this letter was received, the parties to this controversy had two conferences, either between themselves or their respective representatives, looking to the making of another lease for the period of five years when the lease above mentioned would expire. Nothing, however, was concluded with reference to a new lease. About September 1, 1930, the appellants began to move out of the building all their effects and personal property that they had therein. On or about September 2nd, the water connection was discontinued by the city, and the building, after that, was not habitable.

September 2nd of the same year, the attorney for the appellants wrote the agent of the respondents, John Davis & Company, a letter in which it was recited that the appellants were entitled to have the apartment house reconditioned after the grade was completed and have the occupancy of it for the unexpired term of the lease. The letter stated that, unless the property was reconditioned, as provided for in the contract, an action would be instituted. What took place after the receipt of this letter between the attorneys for the respective parties, is directly in dispute. The building was not reconditioned, and about four months later was destroyed. This action followed, and is based upon paragraph 4 of the agreement of May 11, 1928, above mentioned.

The first question is whether the letter of August 20, 1930, by the agent of the respondents, sent to the appellants, which contained the statement that it would be impossible for the tenants of the appellants to occupy the building after the sewer and water connections were severed, was an election to terminate the lease under paragraph 4 of the agreement of May 11, 1928. It will be observed that that paragraph, as above set out, provides that it is stipulated and agreed

between the parties that, if at any time during the continuance of the lease, including the extension therein provided for,

"  . . . the parties of the first part [the respondents] shall desire to repossess said premises and terminate said lease, the value of said lease and the amount which the first parties shall pay to the second parties [the appellants] for the termination and cancellation of said lease is hereby fixed in the sum of Three Thousand and no/100 Dollars ($3,000) . . . "

The letter by John Davis & Company cannot be construed as an election on the part of the respondents to terminate the lease. What is said in that letter must be read in the light of the conditions as they existed at the time and the agreement which had previously been made covering the matter of the time during which the regrade was in progress. In the letter itself, there are discussed other matters, one of which was that of a new tenancy, which would negative the idea that it was the intention to cancel and terminate the lease. In addition to this, the parties, in their negotiation for a new lease subsequent to the time of this letter, did not construe it as an election on the part of the respondents to cancel the lease under paragraph 4 of the agreement, above mentioned.

The next question is whether there was an eviction by reason of the fact that, after the regrade operations were concluded, the building was not reconditioned and made suitable for occupancy. The former lease had not expired to the extent of twenty-eight days. Looking at the agreement above mentioned, the first three paragraphs are obviously intended to cover any contingency that might arise from the regrade operations, and fixed the rights of the parties with reference thereto. The appellants re-

ceived a reduction in rental of twenty-five dollars per month, abatement of rent during the period of interruption, and the extension of the tenancy during a period equal to the time of the interruption.

Paragraph 4, as already indicated, covers an entirely different contingency, towit, the rights of the parties should the respondents "desire to repossess said premises and terminate said lease." The evidence will not sustain a holding that the respondents had elected to terminate the lease under this paragraph.

We recognize the rule supported in *Wusthoff v. Schwartz,* 32 Wash. 337, 73 Pac. 407, and other cases, to the effect that interference with the tenant's beneficial enjoyment of the premises leased would amount to an eviction in law. But the facts of this case do not bring it within the rule. The trial court expressly found:

"That the defendants at all times were ready and willing to recondition the premises and return the apartment house to the property for occupation by the plaintiffs for the remainder of the term of the lease."

When all of the evidence is considered, we are satisfied that the appellants are not entitled to recover under paragraph 4 of the agreement upon which the action was predicated.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, STEINERT, and BLAKE, JJ., concur.